[Cite as *Citibank, N.A. v. Ebbing*, 2013-Ohio-4761.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| CITIBANK (SOUTH DAKOTA), N.A., | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2012-12-252 |
| | : | O P I N I O N |
| - vs - | | 10/28/2013 |
| | : | |
| JOSEPH P. EBBING, | : | |
| Defendant-Appellant. | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. 10 CVF 01180

Javitch, Block & Rathbone, LLC, James Y. Oh, Megan J. Linder, 700 Walnut Street, Suite 300, Cincinnati, Ohio 45202, for plaintiff-appellee

Joseph P. Ebbing, 3800 Princeton Road, Hamilton, Ohio 45011, defendant-appellant, pro se

**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Joseph P. Ebbing, appeals from a decision in the Butler County Court of Common Pleas granting judgment in favor of plaintiff-appellee, Citibank, N.A., in the amount of $5,334.71 following a jury trial.  For the reasons outlined below, we affirm the decision of the trial court.

{¶ 2} On October 26, 2010, Citibank filed a complaint against Ebbing seeking recovery in the amount of $5,334.71 upon an unpaid credit card account number ending in

4312. Ebbing moved to dismiss on November 12, 2010, alleging that Citibank had failed to state a claim upon which relief could be granted. Following the trial court's overruling of Ebbing's motion to dismiss, Ebbing filed an answer and a jury demand.

{¶ 3} On March 4, 2011, Ebbing moved for summary judgment, alleging that Citibank could not bring the action because it did not have a signed writing establishing a loan agreement. Additionally, Ebbing alleged that he never requested nor used such a card and Citibank failed to attach a credit card agreement to the pleading as required by Civ.R. 10(D)(1). Attached to Citibank's response in opposition to Ebbing's motion for summary judgment was an affidavit of a custodian of records for Citibank, Abbie Motley. Motley averred that attached was a true and correct copy of the statement transaction detail on the last periodic billing statement, Exhibit A. Also attached were numerous credit card billing statements for a "Citi Platinum Select Card" sent to Joseph P. Ebbing at a Princeton Road, Hamilton, Ohio, address for an account ending in 4312. Additionally, Citibank attached two checks made out to "Citicards" drawn from a PNC Bank account with Ebbing's name and address in the top left-hand corner of the checks with the account number ending in 4312 in the memo lines. Finally, Citibank attached a standard credit card agreement that was not actually signed by Ebbing.

{¶ 4} The trial court overruled Ebbing's motion for summary judgment, stating that the evidence presented by Citibank attached to its response in opposition established some genuine issues of material fact. Ebbing objected. All of Ebbing's objections were overruled. Prior to the case proceeding to a jury trial, both parties submitted proposed jury instructions. Ebbing objected to Citibank's proposed jury instructions, which the trial court overruled.

{¶ 5} At trial, Citibank presented testimony from a custodian of records and also called Ebbing as a witness. Citibank presented six exhibits, including credit card statements beginning in 2005 that span approximately five years sent to a "Joseph P. Ebbing" on

Princeton Road in Hamilton, Ohio,[1] a credit card agreement that was not signed by the cardholder, three checks made out to "Citicard" that included Ebbing's name and address, a convenience check written to Ebbing's ex-wife signed by a "Joseph P. Ebbing," a letter signed by Ebbing and his ex-wife that was sent to Citibank asking for a reduction in monthly payments, and an affidavit signed by Ebbing. In Ebbing's affidavit, he denied ever applying for a credit card with Citibank, authorizing transactions on a Citibank credit card, or receiving credit card statements at his home address, despite averring that he had lived at 3800 Princeton Road in Hamilton since the end of 2006. At the conclusion of the trial, eight jurors found Ebbing responsible to Citibank in the amount of $5,334.71.

{¶ 6} Ebbing now appeals and asserts four assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT COMMITTED UNLAWFUL AND REVERSIBLE ERROR TO THE PREJUDICE OF [EBBING] IN OVERRULING [HIS] SUMMARY JUDGMENT MOTION CONTRARY TO OHIO LAW.

{¶ 9} Ebbing argues the trial court erred by overruling his summary judgment motion. This court's review of a trial court's ruling on a summary judgment motion is de novo, which means that we review the judgment independently and without deference to the trial court's determination. *Simmons v. Yingling*, 12th Dist. Warren No. CA2010-11-117, 2011-Ohio-4041, ¶ 18. We utilize the same standard in our review that the trial court uses in its evaluation of the motion. *Id.*

{¶ 10} Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law,

---

1. The attached credit card statements were sent to Joseph P. Ebbing at 3800 Hamilton Princeton Road in Hamilton beginning in February 2005. The credit card statements were sent to another address on Princeton Road between July 2005 and December 2006. Beginning January 2007, the credit card statements were sent to 3800 Princeton Road, Hamilton, Ohio 45011. This is consistent with Ebbing averring he moved to his current address at 3800 Princeton Road, Hamilton, Ohio 45011, the end of 2006.

reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties*, *L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party must then present evidence that some issue of material fact remains to be resolved; it may not rest on the mere allegations or denials in its pleadings. *Id.* All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.*, 21 Ohio St.2d 25, 28 (1970).

{¶ 11} We point out that the denial of Ebbing's summary judgment motion occurred prior to a jury trial. The United States Supreme Court and one Ohio appellate court have stated that a party may not "appeal an order denying summary judgment after a full trial on the merits" because that "order retains its interlocutory character as simply a step along the route to final judgment." *Ortiz v. Jordan*, ___ U.S. ___, 131 S.Ct. 884, 888-889 (2011); *Calvary S.P.V. I., L.L.C. v. Krantz*, 8th Dist. Cuyahoga No. 97422, 2012-Ohio-2202, ¶ 9. Once a case proceeds to trial, the full record is developed and this record supersedes the limited record existing at the time of the summary judgment motion. *Ortiz* at 888-889; *Calvary* at ¶ 9. However, even considering Ebbing's arguments, none of the issues raised would entitle him to summary judgment. Ebbing raises five arguments within his first assignment of error, which we address in turn.

{¶ 12} First, Ebbing argues that the trial court "unlawfully ignored or unlawfully modified Civ.R. 10(D)(1)" in order to consider Citibank's "final period statement" as a substitute for a written contract. Civ.R. 10(D)(1) states:

> When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading.

In this case, Citibank attached a copy of the last periodic billing statement for the credit card account. Citibank's complaint set forth allegations that additional documents were not attached because they were sent to Ebbing as monthly statements and were archived. Citibank also stated that the records are voluminous. Thus, Citibank complied with Civ.R. 10(D)(1) by attaching the last periodic billing statement and stating why other documents were not attached. Additionally, the remedy for failing to comply with Civ.R. 10(D)(1) is not a dismissal. *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, ¶ 11. Rather, the burden is on the opposing party to move for a more definitive statement pursuant to Civ.R. 12(E). *Id.* Ebbing did not move for a more definitive statement in this case. Consequently, even if Citibank failed to comply with Civ.R. 10(D)(1), Ebbing waived this argument. *See Ohio Receivables, L.L.C. v. Dallariva*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, ¶ 36.

{¶ 13} Second, Ebbing argues that the trial court failed to apply R.C. 1335.02.[2] R.C. 1335.02(B) provides: "No party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing and is signed by the party against whom the action is brought * * *." However, R.C. 1335.02(A)(3) excludes any "promise, promissory note, agreement, undertaking, or other document or commitment relating to a credit card * * *." Rather than needing a signed written agreement, the *use* of a credit card results in the person using the card being bound by the card member agreement. *Ohio Receivables* at ¶

2. Ebbing asserts that the trial court erred in not addressing R.C. 1317.11. However, R.C. 1317.11 addresses revolving budget agreements and the disputed account in this case relates to a credit card agreement. Consequently, R.C. 1317.11 does not apply.

33. In this case, Citibank produced a copy of the last periodic billing statement for the credit card account, which lists "Joseph P. Ebbing" as the account member for the account number ending in 4312. The last periodic billing statement also shows a balance of $5,334.71 and Joseph P. Ebbing's address as 3800 Princeton Road, Hamilton, OH 45011-5144. Consequently, there is a question of fact as to whether Ebbing used the credit card.

{¶ 14} Third, Ebbing argues that the trial court failed to apply R.C. 1335.05 because it ignored language requiring a writing for an agreement that is not to be performed within one year. Ebbing contends that that the absence of a writing signed by him was fatal to Citibank's claim. R.C. 1335.05 provides:

> No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *.

Essentially, the statute prohibits actions based on oral agreements that cannot be performed within one year. In the case of a credit card, the balance can be paid in full each month and is not "an agreement that is not to be performed within one year from the making thereof." As a matter of law, R.C. 1335.05 does not apply to credit cards. *See Harvest Credit Mgt. VII v. Ryan*, 10th Dist. Franklin No. 09AP-1163, 2010-Ohio-5260, ¶ 11-12. Consequently, Ebbing is not entitled to judgment as a matter of law on the basis that Citibank did not comply with R.C. 1335.05.

{¶ 15} Fourth, Ebbing argues that the trial court unlawfully ignored and failed to apply R.C. 1319.01 because Citibank failed to argue or adduce any Civ.R. 56 evidentiary documentation that Ebbing either requested the credit card, used the credit card, and/or authorized any charges to the credit card. R.C. 1319.01 provides:

> A cardholder who receives a credit card from an issuer, which such cardholder has not requested nor used, shall not be liable for any use made of such credit card which has not been

authorized by such cardholder * * *.

However, Citibank averred through a custodian of records that Ebbing used the credit card and attached the last periodic billing statement containing the alleged credit card number with Ebbing's name and address in support, creating a question of fact as to whether R.C. 1319.01 applies to Ebbing.

{¶ 16} Fifth, Ebbing argues that the trial court erred by unlawfully considering material not presented as required in Civ.R. 56. Specifically, Ebbing asserts that Citibank did not establish any foundation to support the existence of a credit card account. When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of the pleading, but the response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue. *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996); Civ.R. 56(E). "Evidentiary material not specifically authorized by Civ.R. 56(C) may be considered by the trial court if it is properly incorporated into an affidavit by reference." *Truett v. Community Mut. Ins. Co., Blue Cross/Blue Shield*, 91 Ohio App.3d 741, 745-746 (12th Dist.1993); Civ.R. 56(E). Such a requirement is satisfied by a statement in the affidavit declaring that the copies of the documents submitted are true and accurate reproductions of the originals. *HSBC Mtge. Servs., Inc. v. Edmon*, 6th Dist. Erie No. E-11-046, 2012-Ohio-4990, ¶ 11. Credit card statements only constitute proper summary judgment evidence if they are incorporated through a properly framed affidavit. *Dept. Stores Natl. Bank v. McGee*, 7th Dist. Mahoning No. 12 MA 103, 2013-Ohio-894, ¶ 12.

{¶ 17} In this case, Citibank attached an affidavit in support of its memorandum in opposition to Ebbing's motion for summary judgment. In addition to an affidavit, Citibank also attached a copy of a standard credit card agreement, a copy of a payment allegedly made from Ebbing's checking account to "Citicard," several years' worth of account statements with

Ebbing's alleged account number and Princeton Road, Hamilton, address, and a statement transaction detail on the last periodic billing statement for Ebbing's alleged account. Despite the attachments, only the last periodic billing statement was referred to in the affidavit. The affiant stated: "Exhibit A attached hereto is a true and correct copy of the statement transaction detail on the last periodic billing statement for the Account that was sent to defendant(s), which reflects the balance due and owing on the Account as of closing date on such statement." The last periodic billing statement lists "Joseph P. Ebbing" as the account member for the account number ending in 4312. The last periodic billing statement also shows a balance of $5,334.71 and Joseph P. Ebbing's address as "3800 Princeton Rd, Hamilton, OH 45011-5144." The attached affidavit with its incorporation of the last periodic billing statement by reference and the information contained therein is enough to create a question of fact as to whether Ebbing is responsible to Citibank for a $5,334.71 debt whether or not the additional items attached to the affidavit could properly be considered.

{¶ 18} Ebbing also asserts that the affiant, Abbie Motley, has no personal knowledge of any transaction contained in the attached records and thus her statements are inadmissible hearsay. Ebbing argues that the last periodic billing statement has no probative value because it does not "include actual charges of the account."

{¶ 19} To be considered in a summary judgment motion, Civ.R. 56(E) requires an affidavit to be made on personal knowledge, set forth such facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. Civ.R. 56(E). "Absent evidence to the contrary, an affiant's statement that his affidavit is based on personal knowledge will suffice to meet the requirement of Civ.R. 56(E)." *Wells Fargo Bank v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 16.

{¶ 20} Evid.R. 803(6), the business records exception to the hearsay rule, provides that the hearsay rule does not exclude a document, "made at or near the time by, or from

information transmitted by, a person with knowledge," if the document is "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the" document, "all as shown by the testimony of the custodian or other qualified witness * * *."

{¶ 21} In order to properly authenticate business records, a witness must "testify as to the regularity and reliability of the business activity involved in the creation of the record." *State v. Glenn*, 12th Dist. Butler No. CA2009-01-008, 2009-Ohio-6549, ¶ 19. Firsthand knowledge of the transaction is not required by the witness providing the foundation. *Id.* However, the witness must be

> sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6).

*Id.*; *see also Cent. Mtge. Co. v. Bonner*, 12th Dist. Butler No. CA2012-10-204, 2013-Ohio-3876, ¶ 16.

{¶ 22} In this case, Motley averred that she is a custodian of the records for Citibank and has personal knowledge of and access to the relevant information regarding the account number ending in 4312. Motley further averred that Ebbing used or authorized the use of the account number ending in 4312 for the purpose of obtaining an extension of credit and that Ebbing was provided with periodic billing statements. Finally, Motley averred that the last periodic billing statement attached as Exhibit A is a "true and correct business record reflecting information created and maintained by Citibank * * * in the course of regularly conducted business activity" and that it "was made at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." Motley's description of her position in relation to Citibank and description of the relevant business records sufficiently

established her competency to testify to these matters and fall under the hearsay exception in Evid.R. 803(6). *See Fifth Third Mtge. Co. v. Bell*, 12th Dist. Madison No. CA2013-02-003, 2013-Ohio-3678, ¶ 28; *Ohio Receivables*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, at ¶ 26. A proper foundation was laid for the attached affidavit and incorporation of the last periodic billing statement was proper Civ.R. 56 evidence. Consequently, a question of fact was created as to whether Ebbing is responsible to Citibank for a $5,334.71 debt.

**{¶ 23}** Ebbing's first assignment of error is overruled.

**{¶ 24}** Assignment of Error No. 2:

**{¶ 25}** THE TRIAL COURT COMMITTED UNLAWFUL AND REVERSIBLE ERROR TO THE PREJUDICE OF [EBBING] IN CHARGING THE JURY WITH INCOMPLETE, INAPPOSITE, AND MISLEADING INSTRUCTIONS.

**{¶ 26}** Ebbing argues that the trial court's jury instructions were "misleadingly incomplete or misdirecting and inapposite to the simple contract case before the jury." Specifically, Ebbing does not state how the jury instructions were incomplete, misdirecting, or inapposite. Rather, Ebbing refers us to the jury instructions he proposed to the trial court.

**{¶ 27}** "When considering the appropriateness of a jury instruction, or when a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole." *Enderle v. Zettler*, 12th Dist. Butler No. CA2005-11-484, 2006-Ohio-4326, ¶ 36. "If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." *Withers v. Mercy Hosp. of Fairfield*, 12th Dist. Butler No. CA2010-02-033, 2010-Ohio-6431, ¶ 17, citing *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427 (1922). "Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." *Withers* at ¶ 17.

**{¶ 28}** An appellate court will reverse a trial court's refusal to give a proposed jury instruction only if (1) the trial court abused its discretion by failing to give the requested instruction and (2) the complaining party was prejudiced as a result. *Enderle* at ¶ 37. A trial court is not required to give a proposed jury instruction merely because counsel submitted it. *Silver v. Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, ¶ 90 (12th Dist.).

**{¶ 29}** In this case, Ebbing's proposed jury instructions contained misstatements of the law. Ebbing's requested instructions included a defense that a signed writing was required in order for the defendant to be liable. As discussed in the first assignment of error, for a credit card agreement to exist, there does not have to be a signed writing. R.C. 1335.02(A)(3). Rather, use of the credit card is sufficient to create an agreement. *Ohio Receivables*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, at ¶ 33; *see Assett Acceptance LLC v. Davis*, 5th Dist. Fairfield No. 2004CA00054, 2004-Ohio-6967, ¶ 48. Consequently, the trial court did not abuse its discretion in failing to utilize Ebbing's proposed jury instructions.

**{¶ 30}** Furthermore, when looking at the jury instructions as a whole, we do not see how Ebbing was materially prejudiced. In providing jury instructions, the trial court explained the different roles of judge and jurors, the definition of evidence and how it may be direct or indirect, witness credibility, and the burden of proof in civil cases. The trial court addressed the applicable law. The trial court went through the pleadings, the elements of a contract, and addressed the statute of frauds. The trial court read the exception for credit cards under R.C. 1335.02(A)(3) almost verbatim. After reviewing the record, we find that the trial court did not abuse its discretion in submitting instructions to the jury.

**{¶ 31}** Ebbing's second assignment of error is overruled.

**{¶ 32}** Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT COMMITTED UNLAWFUL AND REVERSIBLE ERROR TO THE PREJUDICE OF [EBBING] IN ALLOWING THE JURY TO SEE, HEAR, AND CONSIDER INADMISSIBLE EVIDENCE.

{¶ 34} Ebbing argues that five of Citibank's exhibits admitted by the trial court were improper based on various rules of evidence. We address the exhibits in turn.

{¶ 35} In general, the admission of relevant evidence lies within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. "In order for appellant to succeed on this proposition, he must show that the trial court abused its discretion in the admission * * * and that the appellant has been materially prejudiced thereby." *State v. Martin*, 19 Ohio St.3d 122, 129 (1985). An abuse of discretion is more than just an error of law or judgment; it implies the trial court's decision in admitting the evidence was unreasonable, arbitrary, or unconscionable. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 36} First, Ebbing argues that the trial court erred in admitting Citibank's Exhibit 1, consisting of numerous monthly credit card statements spanning approximately five years for the credit card account number ending in 4312, and Exhibit 2, a credit card agreement consisting of the terms and conditions of an account, because they constitute inadmissible hearsay. We disagree.

{¶ 37} "Hearsay is generally inadmissible, unless it falls within the scope of an exception within the Rules of Evidence." *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 12, citing *State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987); Evid.R. 802. One such exception is the "records of regular conducted activity," more commonly known as the business records exception. Evid.R. 803(6); R.C. 2317.40.

{¶ 38} As discussed earlier,

> [t]o qualify for admission under Rule 803(6), a business record

- 12 -

must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the "custodian" of the record or by some "other qualified witness."

*State v. Glenn*, 12th Dist. Butler No. CA2009-01-008, 2009-Ohio-6549, ¶ 17, quoting *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 171. "Even after these elements are established, however, a business record may be excluded from evidence if 'the source of information or the method or circumstances of preparation indicate lack of trustworthiness.'" *Davis* at ¶ 171, quoting Evid.R. 803(6).

{¶ 39} In order to properly authenticate business records, a witness must "testify as to the regularity and reliability of the business activity involved in the creation of the record." *Glenn* at ¶ 19. Firsthand knowledge of the transaction is not required by the witness providing the foundation. *Id.* However, the witness must be

sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6).

*Id.*; *see also Cent. Mtge. Co. v. Bonner*, 12th Dist. Butler No. CA2012-10-204, 2013-Ohio-3876, ¶ 16.

{¶ 40} In this case, Steve Sabo, an assistant vice president for Citibank authenticated Exhibits 1 and 2. In regard to Exhibit 1, the credit card statements, Sabo testified that the record is a type that Citibank maintains in its regularly conducted business activity, that it is Citibank's regular business to maintain these records, and that the records were maintained pre-transaction. Regarding Exhibit 2, the credit card agreement, Sabo testified that the record is a type of record Citibank maintains in its regular course of business, it is Citibank's business to maintain such records, and the record was created at the time the credit card

account was established. Furthermore, Sabo testified that he is a custodian of Citibank's records and is familiar with Citibank's record keeping activities. As such, the trial court did not abuse its discretion in admitting Exhibits 1 and 2 as they are not hearsay because they fall within the business records exception.

{¶ 41} Next, Ebbing argues that Exhibits 3 and 4 are not relevant under Evid.R. 402. Exhibit 3 consists of three checks and Exhibit 4 is a convenience check. Specifically, Ebbing argued below that Exhibit 3, consisting of three checks, is not relevant because the checks "clearly were not from [Ebbing]." Ebbing also argued below that Exhibit 4, the convenience check, was not relevant because the check that he wrote against Citibank had nothing to do with a credit card charge.

{¶ 42} "Relevant evidence" is evidence which has any tendency to make the existence of any fact more or less probable. Evid.R. 401. All relevant evidence is admissible, unless specifically excluded. Evid.R. 402. According to Evid.R. 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 43} Exhibit 3 consists of three checks all made out to "Citicards" with an account number ending in 4312 in the memo lines. One check is drawn from Emery Federal Credit Union, which has "Erin & Joseph Ebbing" in the top left-hand corner with a Princeton Road, Hamilton, address. The other two checks are drawn from PNC Bank, and have the name "Joseph P. Ebbing" in the top left-hand corner with a Princeton Road, Hamilton, address. Exhibit 4 is a convenience check in the amount of $4,800 paid to the order of Erin Ebbing and signed by a Joseph P. Ebbing. In the top left-hand corner of the convenience check is the name "Joseph P. Ebbing" with a Princeton Road, Hamilton, address. Sabo testified that a convenience check is a check that is inserted in the monthly billing statement that can be

used by the account holder at his or her discretion. Sabo also testified that the convenience check was reflected in a credit card statement admitted in Exhibit 1. Both exhibits are relevant to the case at hand as to whether Ebbing was the holder of an account number ending in 4312 at Citibank. Both exhibits contained Ebbing's name and address, the checks in Exhibit 3 held a memo line of an account number ending in 4312, and Sabo testified that the convenience check is reflected in the credit card statements in Exhibit 1. The trial court did not abuse its discretion in finding Exhibits 3 and 4 relevant and admitting them into evidence.

{¶ 44} Last, Ebbing argues that Exhibit 5, a letter signed by him and his ex-wife to Citibank, is an offer to compromise and should have been excluded by the trial court as an offer to compromise. Citibank asserts that Exhibit 5 was not an offer to compromise because the existence of the claim was not in dispute, but rather the amount of the claim was in dispute.

{¶ 45} Evid.R. 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

{¶ 46} In this case, Exhibit 5 was signed by Joseph P. Ebbing and Erin M. Ebbing, contained an account number ending in 4312 in the memo line, and asked for Citibank to accept a monthly payment of $25. While the memo line in this letter stated "settlement offer," there was not yet pending litigation as of the date of the letter and thus Exhibit 5 falls outside of the scope of Evid.R. 408. Because the letter predated the litigation initiated by Citibank, the trial court did not abuse its discretion in admitting Exhibit 5. *See Harman Group Corporate Fin., Inc. v. Academy of Medicine of Columbus & Franklin Cty.*, 94 Ohio App.3d

712, 726 (10th Dist.1994); *Atkinson v. Internatl. Technegroup, Inc.*, 106 Ohio App.3d 349, 364-65 (1st Dist.1995).

{¶ 47} Even if we were to construe Exhibit 5 as an offer to compromise prohibited by Evid.R. 408, given the ample evidence concerning the claim other than the alleged settlement negotiations, including volumes of credit card statements with Ebbing's name and address and checks made out to "Citicard" with Ebbing's name and address, any error in the admission of Exhibit 5 cannot be viewed as affecting Ebbing's substantial rights, and is harmless. Evid.R. 103; Civ.R. 61; *Silver*, 190 Ohio App.3d 549, 2010-Ohio-5314, at ¶ 99.

{¶ 48} Ebbing's third assignment of error is overruled.

{¶ 49} Assignment of Error No. 4:

{¶ 50} THE TRIAL COURT COMMITTED UNLAWFUL AND REVERSIBLE ERROR TO THE PREJUDICE OF [EBBING] IN OVERRULING [EBBING'S] MOTION FOR A DIRECTED VERDICT WHERE SUFFICIENT AND UNCONTROVERTED EVIDENCE DEMONSTRATED THE ABSENCE OF ANY WRITTEN OR VERBAL CONTRACT OF WHICH DEFENDANT COULD POSSIBLY BE IN DEFAULT THEREOF.

{¶ 51} Ebbing argues that the "trial court unlawfully allowed [Citibank] and the jury to ignore Ohio laws mandating a written contract." Further, Ebbing argues that because Citibank's evidence was inadmissible, it did not prove any element of the matter before the jury. Ebbing contends that the only lawful evidence showed that Ebbing was entitled by law to judgment in his favor. However, as stated in the third assignment of error, the majority of Citibank's evidence was admissible.

{¶ 52} We review a trial court's decision on a motion for directed verdict or judgment notwithstanding the verdict de novo. *Phipps v. Internatl. Paper Co.*, 12th Dist. Clinton No. CA2013-02-003, 2013-Ohio-3994, ¶ 10. A favorable ruling on either motion is not easily obtained. *Osler v. Lorain*, 28 Ohio St.3d 345, 347 (1986). The standard for granting a

motion for judgment notwithstanding the verdict is the same as that for granting a motion for directed verdict. *Choate v. Tranet, Inc.*, 12th Dist. Warren No. CA2005-09-105, 2006-Ohio-4565, ¶ 48.

{¶ 53} That is, when considering either motion, the evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made. *Phipps* at ¶ 11. If the court finds that reasonable minds could not differ as to any determinative issue, then the court must sustain the motion. *Id.* If, on the other hand, there is substantial competent evidence to support the nonmoving party, upon which reasonable minds might reach different conclusions, the motion must be denied. *Id.*

{¶ 54} "To prove a breach of contract claim, a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Discover Bank v. Poling*, 10th Dist. Franklin No. 04AP-1117, 2005-Ohio-1543, ¶ 17, quoting *Nilavar v. Osborn*, 137 Ohio App.3d 469, 483 (2d Dist.2000). "[C]redit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement." *Poling* at ¶ 17; *Bank One, Columbus, N.A. v. Palmer*, 63 Ohio App.3d 491, 493 (10th Dist.1989); *Asset Acceptance*, 5th Dist. Fairfield No. 2004-CA-00054, 2004-Ohio-6967, at ¶ 48. Consequently, a written contract is not needed in order for a credit card agreement to be binding.

{¶ 55} In this case, Sabo authenticated numerous years' worth of credit card statements with Ebbing's name and address. Sabo also authenticated the general credit card agreement, checks made to "Citicards" from accounts with Ebbing's name on them, and a convenience check made out to Ebbing's ex-wife and signed by Ebbing, which Sabo testified is drawn against the credit card itself and is reflected in the credit card statements in Exhibit 1. The credit card agreement provides that the card holder must pay all amounts due

on the account. Ebbing denied ever having a PNC account or a Citibank credit card number ending in 4312. Ebbing also stated he could not recall writing the convenience check to his ex-wife, though he was 90 percent sure that it was his signature on the convenience check. However, construing the evidence presented in Citibank's favor, there is substantial competent evidence to support Citibank's claim. Consequently, the trial court did not err in failing to grant Ebbing's motion for judgment notwithstanding the verdict.

{¶ 56} With regard to Ebbing's argument that the trial court erred denying his motion for a new trial, Civ.R. 59(A) sets forth nine grounds under which a party may seek a new trial and permits a court to grant a new trial for "good cause shown."[3] On appeal, Ebbing appears to argue that the judgment was not sustained by the weight of the evidence as he asserts that the only lawful evidence showed that he was entitled to judgment as a matter of law.

{¶ 57} The decision to grant or deny a motion for a new trial is reviewed on appeal under an abuse of discretion standard of review. *Kranz v. Kranz*, 12th Dist. Warren No. CA2008-04-054, 2009-Ohio-2451, ¶ 38; *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312 (1995). As the Ohio Supreme Court has stated that the manifest weight standard is the same in both criminal and civil contexts, the weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Harris v. Summers*, 7th Dist. Columbiana No. 10-CO-27, 2011-Ohio-6544, ¶ 14, quoting *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226 (1994). In the event the evidence is susceptible to more than one interpretation, we must construe it

---

3. Ebbing argued below that there were irregularities in the proceedings, was an error of law that occurred during trial that was brought to the attention of the trial court, and the judgment was not supported by the weight of the evidence.

consistently with the lower court's judgment. *Harris* at ¶ 14, quoting *Gerijo* at 226. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to decide. *Kalain v. Smith*, 25 Ohio St.3d 157, 162 (1986).

{¶ 58} As discussed above, while Ebbing continually denied having a credit card account with Citibank, Citibank produced numerous exhibits tying Ebbing to the delinquent credit card account. As the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact, the trial court did not err in finding the verdict supported by the manifest weight of the evidence and denying Ebbing's motion for a new trial.

{¶ 59} Ebbing's fourth assignment of error is overruled.

{¶ 60} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.