[Cite as *Taye v. Cuyahoga Hills Juvenile Corr. Facility*, 2026-Ohio-39.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ALEXANDER TAYE,                     :

    Plaintiff-Appellant,       :            No. 115004

    v.                                  :

CUYAHOGA HILLS JUVENILE              :
CORRECTIONAL FACILITY, ET AL.,

                                                                :

    Defendants-Appellees.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 8, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-994863

---

### *Appearances:*

Seaman & Associates and David L. Meyerson, *for appellant*.

David Yost, Ohio Attorney General, Amer Cunningham Co. L.P.A., and Thomas M. Saxer, *for appellee* Cuyahoga Hills Juvenile Correctional Facility.

WILLIAM A. KLATT, J.:

{¶ 1} Plaintiff-appellant Alexander Taye ("Taye") appeals from the March 12, 2025 judgment that granted defendant-appellee Cuyahoga Hills Juvenile

Correctional Facility's ("CHJCF") motion for summary judgment. For the following reasons, we reverse and remand for proceedings consistent with this opinion.

**Factual and Procedural History**

{¶ 2} On or about April 27, 2021, Taye allegedly sustained a compensable injury received in the course of, and arising out of, his employment as a juvenile corrections officer for the CHJCF ("work incident" or "April 2021 work incident").

{¶ 3} On May 3, 2021, Taye began receiving treatment from Dr. Robert K. Nichols, D.C. ("Dr. Nichols") for injuries allegedly incurred in the work incident. Taye applied for compensation and/or benefits under the Ohio Workers' Compensation Act, and his claim was allowed for left and right shoulder sprain, left and right knee sprain, cervical spine sprain, and lumbar spine sprain.

{¶ 4} Pursuant to Dr. Nichols's orders, Taye obtained an MRI of his left shoulder on September 16, 2021. The results revealed a partial rotator cuff tear and impingement syndrome of the left shoulder ("additional conditions" or "partial rotator cuff tear and impingement").

{¶ 5} On November 11, 2021, Taye filed with the Ohio Bureau of Workers' Compensation a motion to amend his claim to include additional allowances for substantial aggravations of his partial rotator cuff tear and impingement. The Industrial Commission disallowed this request, finding that there was insufficient objective clinical and diagnostic evidence that the April 2021 work incident substantially aggravated any preexisting left shoulder condition.

{¶ 6} Pursuant to R.C. 4123.512, Taye filed an appeal of the Industrial Commission's decision in the common pleas court on March 22, 2024, seeking the right to participate in the Ohio Bureau of Workers' Compensation Fund for the additional conditions he allegedly sustained in the work incident.

{¶ 7} On January 14, 2025, CHJCF filed a motion for summary judgment arguing that Taye failed to meet his burden of proof because he offered no "objective evidence" of a substantial aggravation of a preexisting condition. Specifically, CHJCF argued that pursuant to R.C. 4123.01(C)(5), a workers' compensation claimant alleging a substantial aggravation of a preexisting condition must submit pre-injury medical documentation — or objective evidence — of the preexisting condition. Without such evidence, CHJCF argued the claimant could not establish the extent of his condition at the time the work-related incident occurred. CHJCF relied on *Lake v. Anne Grady Corp.*, 2013-Ohio-4740 (6th Dist.), in support of its argument. CHJCF contended that the only objective evidence presented was an MRI obtained five months after the work incident that demonstrated Taye's condition after the April 2021 work incident rather than before the work incident.

{¶ 8} In anticipation of trial, Taye's counsel secured the deposition testimony of Dr. Nichols on February 24, 2025. Dr. Nichols testified that he examined Taye on May 3, 2021, and administered the Apley Scratch Test, Neers Test, and Hawkins Test, which were positive for a rotator cuff injury and impingement. Dr. Nichols stated that the test results amounted to objective findings.

{¶ 9} Dr. Nichols stated that Taye received follow-up care and on June 30, 2021, Dr. Nichols requested that Taye undergo an MRI of his left shoulder because of ongoing symptoms. Taye underwent an MRI in September 2021. Dr. Nichols testified that the MRI indicated tendinitis, a partial rotator cuff tear, acromioclavicular joint arthrosis with capsular thickening, edema, and impingement.

{¶ 10} Dr. Nichols further testified that the partial rotator cuff tear and impingement were degenerative in nature and both preexisted his workplace injury. Dr. Nichols also stated that the partial rotator cuff tear and impingement became substantially aggravated as a direct and proximate result of the April 2021 work incident. According to Dr. Nichols, Taye would not have experienced a substantial aggravation of the additional conditions but for the April 2021 work incident. Dr. Nichols testified that edema, or swelling, is usually found in acute trauma.

{¶ 11} Dr. Nichols stated that based upon the MRI findings, his clinical findings, and Taye's subjective complaints, it was his opinion that Taye's partial rotator cuff tear and impingement were chronic, degenerative changes that preexisted the April 2021 work injury and they became substantially aggravated as a direct and proximate result of the April 2021 work injury.

{¶ 12} Dr. Nichols also conceded that his office notes indicated that between the April 2021 work injury and the date of the MRI — September 2021 — Taye experienced between four to six additional altercations at work that exacerbated his

left shoulder symptoms.  Defense counsel questioned Dr. Nichols about the additional altercations:

> DEFENSE COUNSEL:  Sure.  You don't know of any additional injury that Mr. Taye may have incurred as a result of those three alterations or altercations, you don't know how it relates to the condition of his shoulder on April 27th and you don't know how it relates to the date of the MRI, correct?
>
> DR. NICHOLS:  That's true.

Tr. 61.

{¶ 13}  Dr. Nichols further testified that the finding of edema, or swelling, on the MRI could have been caused by the subsequent altercations whereas the degenerative changes shown on the MRI had been present before the April 2021 work incident:

> PLAINTIFF'S COUNSEL:  Right.  You were also asked about all these other additional incidences at work that he has to do as part of his tough job.
>
> DR. NICHOLS:  Correct.
>
> PLAINTIFF'S COUNSEL:  Okay.  And there were a number of them according to your notes, okay, and reported by Mr. Taye that happened even before he could get that MRI?
>
> DR. NICHOLS:  That's correct.
>
> PLAINTIFF'S COUNSEL:  After the April 27th injury.
>
> DR. NICHOLS:  That's correct.
>
> PLAINTIFF'S COUNSEL:  So whatever is on that MRI could be the result of a combined effect of all of these events.
>
> DR. NICHOLS:  That's correct.

PLAINTIFF'S COUNSEL: So not only the event April 27th but combined with these other events at work?

DR. NICHOLS: The numerous other instances of altercations since my initial request for an MRI? Absolutely.

PLAINTIFF'S COUNSEL: The findings on the MRI, could they be based on a direct causation from these numerous incidents?

DR. NICHOLS: That's true. That's correct.

PLAINTIFF'S COUNSEL: I mean I understand you believe that some of the conditions are degenerative in nature and have been there for awhile?

DR. NICHOLS: That's correct.

PLAINTIFF'S COUNSEL: What finding on the MRI would indicate that it's, I think we talked about it earlier, but what was that finding on the MRI that would indicate that it's a recent event.

DR. NICHOLS: The edema.

Tr. 74-75.

{¶ 14} On February 25, 2025, Taye filed a copy of Dr. Nichols's deposition testimony with the trial court.

{¶ 15} On that same date, Taye filed a brief in opposition to CHJCF's motion for summary judgment and argued that R.C. 4123.01(C)(5), which provides the requirements for demonstrating a substantial aggravation of a preexisting condition, does not require medical documentation of a preexisting condition dated prior to the workplace injury. Taye attached to his brief in opposition Dr. Nichols's affidavit that stated the MRI showed chronic, preexisting degenerative changes including a partial rotator cuff tear and impingement that predated the April 2021

work injury. The affidavit further opined that the MRI findings and Dr. Nichols's clinical findings — both objective test results — and Taye's subjective complaints demonstrated the partial rotator cuff tear and impingement were substantially aggravated as a direct and proximate result of the April 2021 work injury.

{¶ 16} One day later, on February 26, 2025, CHJCF filed a reply brief that reiterated it was entitled to summary judgment because Dr. Nichols did not establish through medical documentation the extent of Taye's preexisting condition prior to the workplace injury. The reply brief made no mention of Dr. Nichols's deposition testimony.

{¶ 17} The trial court issued a detailed judgment entry on March 11, 2025, that denied CHJCF's motion. The March 11, 2025 entry states, in relevant part:

> Here, the defendant asserts that since the record is devoid of any "objective evidence" of the nature and extent of the plaintiff's left rotator cuff tear and left shoulder impingement syndrome as of April 27, 2021, then he is unable to prove a substantial aggravation, because an aggravation can only be demonstrated with objective evidence of both the immediate pre-injury status of the existing condition and then objective evidence of the post-injury status of the condition.
>
> In other words, to prove a change one must prove the status of the condition before and after the new injury. . . .
>
> The plaintiff has opposed the motion on the grounds that his doctor's opinion demonstrates a genuine issue of material fact on the existence of objective evidence supporting the claim for aggravation of pre-existing injuries. In support, he cites to the affidavit of Robert K. Nichols, D.C. In that affidavit, the chiropractor attests that he first examined Taye six days after the incident giving rise to the pending claim. Later, he ordered a left shoulder MRI which was taken on September 16, 2021. . . .

Upon his review of the radiologist's report of the MRI, Nichols expresses the following opinions:

> Based on the objective clinical findings in conjunction with the objective MRI findings and based on Mr. Taye's subjective complaints, the diagnosis of incomplete rotator cuff tear or rupture of the left shoulder and impingement syndrome of the left shoulder are directly and causally related to the April 27, 2021 work injury by way of substantial aggravation.

> The MRI findings, including edema, and my clinical findings of positive test results demonstrate objectively the substantial aggravation of the pre-existing left rotator cuff tear and impingement syndrome.

In the context of a summary judgment motion, that testimony creates a genuine issue of material fact about whether aggravations of pre-existing conditions are supported by objective evidence, namely the MRI, in conjunction with the plaintiff's subjective complaints.

For these reasons, the defendant's motion for summary judgment is denied.

March 11, 2025 judgment entry.

{¶ 18} One day later, the trial court sua sponte reconsidered its denial of the summary judgment motion. The trial court stated during open court that it reviewed Dr. Nichols's deposition testimony and determined that "there is not enough evidence for a jury to find that the event of April 27, which is at issue in this case, caused those alleged substantial aggravations because there is an absence of objective evidence of the substantial aggravation, so." Tr. 9-10. The trial court issued a journal entry on March 12, 2025, that did not reference the comments made in open court but stated the court found "the record was devoid of objective evidence

of a substantial aggravation of the" additional conditions and, accordingly, granted CHJCF's summary judgment motion.

{¶ 19} On April 10, 2025, Taye filed a notice of appeal from the trial court's granting of summary judgment, and he now presents two assignments of error:

> Assignment of Error I: The trial court erred by sua sponte granting summary judgment through: (1) considering evidence not properly before it under Civ.R. 56(C), (2) relying on grounds not identified or raised by the moving party, thereby exceeding its judicial authority and denying appellant due process.

> Assignment of Error II: The trial court erred when interpreting O.R.C. 4123.01(C)(5), by applying an evidentiary standard that exceeds statutory requisites, contradicts binding precedent, and yields absurd results.

## Legal Analysis

## A. Standard of Review

{¶ 20} Before a trial court grants a motion for summary judgment, pursuant to Civ.R. 56(C), the court must determine that

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 21} On a summary-judgment motion, the moving party's initial burden is to identify specific facts in the record that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 1996-Ohio-107, ¶ 17. If the moving party does not satisfy this burden, summary judgment is not appropriate. If the moving party meets the

burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record that demonstrate the existence of a genuine issue of material fact for trial. *Id.* Where the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.* "[A]ll evidence submitted upon a motion for summary judgment [must] be construed most strongly in favor of the party against whom the motion is made." *Morris v. First Natl. Bank & Trust Co.*, 21 Ohio St. 2d 25 (1970), paragraph two of the syllabus.

{¶ 22} An appellate court applies a de novo standard when reviewing a trial court's decision that granted summary judgment. *Bayview Loan Servicing, L.L.C. v. St. Cyr*, 2017-Ohio-2758, ¶ 11 (8th Dist.).

{¶ 23} For ease of discussion, we address Taye's assigned errors in reverse order. In his second assignment of error, Taye contends that the trial court erroneously interpreted R.C. 4123.01(C)(5) when it granted CHJCF's motion for summary judgment.

{¶ 24} "Under Ohio law, "'[a] workers' compensation claimant seeking the right to participate for an injury arising from an industrial accident must show by a preponderance of the evidence, medical or otherwise, the existence of a direct and proximate causal relationship between the accident and the injury."'" *Fabro v. OhioHealth Corp.*, 2014-Ohio-5161, ¶ 9 (10th Dist.), quoting *Briggs v. Franklin Pre-Release Ctr.*, 2014-Ohio-2477, ¶ 10 (12th Dist.), quoting *Phipps v. Internatl. Paper Co.*, 2013-Ohio-3994, ¶ 12 (12th Dist.). An injury, for purposes of workers' compensation, is defined as "any injury, whether caused by external accidental

means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C).

{¶ 25} Preexisting injuries are specifically excluded from the statutory definition of an "injury" except for preexisting conditions that are substantially aggravated by the work injury and that are documented with specified objective findings:

"Injury" does not include:

. . .

(5) A condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury. Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

R.C. 4123.01(C)(5).

{¶ 26} Where statutory language is clear and unambiguous, the courts must enforce the statute as written, without implementing additions or subtractions. *Gardi v. Bd. of Edn.*, 2013-Ohio-3436, ¶ 11 (8th Dist.), quoting *Hubbard v. Canton City School Bd. of Edn.*, 2002-Ohio-6718, ¶ 14, *superseded by statute on other grounds*. This court previously found the language of R.C. 4123.01(C)(5) is clear and unambiguous:

We find the language of R.C. 4123.01(C)([5]) to be clear and unambiguous.[1] Specifically, the statute requires that a substantial aggravation of a pre-existing injury must be documented by objective diagnostic findings, objective clinical findings, or objective test results. There is no language anywhere in the statute that requires the pre-existing condition to be medically documented prior to the workplace injury that allegedly aggravated the condition. Accordingly, any requirement that a claimant must present pre-injury documentation of the pre-existing condition before the claimant may recover under R.C. 4123.01(C)([5]) for substantial aggravation of the condition adds a requirement that is not in the statute.

*Gardi* at ¶ 12.

{¶ 27} This court applied *Gardi*'s rationale in *Haynik v. Sherwin-Williams Co.*, 2014-Ohio-1620 (8th Dist.), and stated R.C. 4123.01(C)(5) does not require medically documented proof of a prior aggravated injury:

Thus, this court has previously held that R.C. 4123.01(C)([5]) does not require any medically documented proof of the injured worker's condition prior to the aggravation injury. In fact, requirement of such proof would be available only in the most limited and fortuitous circumstances wherein imaging studies had been conducted of the afflicted body part before the workplace accident occurred. Such a requirement is not present in the statute, and we decline to make it so in the present case.

*Haynik* at ¶ 17.

{¶ 28} In contravention to the statutory language of R.C. 4123.01(C)(5) and the holdings of *Gardi* and *Haynik*, CHJCF argued that it was entitled to summary judgment because Taye failed to provide pre-injury documentation. We find

---

[1]When this court decided *Gardi*, the relevant statute was R.C. 4123.01(C)(4). Pursuant to an amendment by HB 447 in 2022, R.C. 4123.01(C)(4) was redesignated as R.C. 4123.01(C)(5).

CHJCF's arguments, which rely on *Lake,* 2013-Ohio-4740 (6th Dist.), are misguided.

{¶ 29} Viewing the only argument raised in the CHJCH's summary judgment motion — that Taye failed to provide pre-injury documentation of his aggravated condition — we find CHJCH was not entitled to summary judgment. Dr. Nichols's affidavit attached to Taye's brief in opposition clearly stated that the MRI showed chronic degenerative changes, including Taye's partial rotator cuff tear and impingement, that preexisted the April 2021 work incident. Dr. Nichols also attested, within a reasonable degree of medical certainty, that based upon the objective findings of the MRI, Dr. Nichols's clinical findings, and Taye's subjective complaints, Taye's preexisting partial rotator cuff and impingement were substantially aggravated by his April 2021 work incident. Such evidence was sufficient to demonstrate a genuine issue of material fact and to defeat summary judgment.

{¶ 30} For the foregoing reasons, Taye's second assignment of error is sustained and his first assignment of error is rendered moot. We reverse the trial court's decision granting summary judgment in favor of CHJCF, vacate the March 12, 2025 journal entry that granted CHJCF's summary judgment motion, and remand the matter for further proceedings consistent with this opinion.

{¶ 31} Judgment reversed and remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

MICHELLE J. SHEEHAN, A.J., and
EMANUELLA D. GROVES, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)